UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BART LOEB,   Case No. 05-78538
             Chapter 7
             Hon. Marci B. McIvor

        Debtor.
_____/

TOM SCHMITZ,

        Plaintiff,

v.   Adv. Proc. 06-4000

BART LOEB,

        Defendant.
_____/

## OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed a two-count adversary complaint alleging that Defendant should be denied his discharge pursuant to § 727(a)(2)(concealment of assets) and/or § 727(a)(4)(false oaths). Plaintiff filed this motion for summary judgment on both counts. For the reasons set forth below, this Court DENIES Plaintiff's Motion for Summary Judgment with respect to § 727(a)(2) and GRANTS Plaintiff's Motion for Summary Judgment with respect to § 727(a)(4).

I.

## FACTUAL BACKGROUND

Defendant was the sole owner of numerous businesses which organize, promote and book large scale retail sales shows. The businesses which generated the most

revenue were New Super Sale, Inc. and World Discount Club, Inc. From 2002 through 2004 , the Defendant's businesses grossed between 60 and 70 million dollars, mostly in cash (Exhibit 1, pp. 67-72). [1]

On October 11, 2005, Defendant filed his chapter 7 bankruptcy under the name of Bart Loeb. [2] Approximately one month after Defendant filed for bankruptcy, Defendant's bookkeeper and at least one other former employee of Defendant started a business named "X-Factor". X-Factor's business is identical to that of Debtor's company, New Super Sales, Inc. Defendant is an advisor to, and receives income from, X-Factor. (Exhibit 1, p. 32, 91-95)

On January 19, 2006, the Chapter 7 Trustee conducted a 2004 Examination of the Defendant. On October 27, 2006, Plaintiff deposed Defendant.

Plaintiff argues that Defendant should be denied his discharge under § 727(a)(2) and (a)(4). Plaintiff alleges the following violations of the statute:

1. On the Petition Cover Sheet, Defendant failed to list all of the corporate bankruptcies filed by Defendant's corporation, Super Sale of America, Inc. (case No. 98-59889) in 1998.

2. Debtor's Petition lists his name as Bart Loeb when his full name is Bart Neil Loeb. (Plaintiff's Exhibit 5, pp 3-5)

3. On his Petition, Debtor lists his debts as consumer, non-business debts. Many of

---

[1] Exhibit 1 refers to the Transcript of Defendant's 2004 exam, taken by the Chapter 7 Trustee on January 19, 2006. Defendant's testimony was taken under oath. Exhibit 2 refers to the Transcript of Defendant's deposition testimony, taken by Plaintiff on October 27, 2006. Defendant's testimony was taken under oath.

[2] Several businesses owned solely by Defendant filed for bankruptcy on November 11, 1998. One of those business's was named "Super Sales of America, Incorporated."

2

Defendant's debts are business debts for which he gave a personal guarantee. (Plaintiff's Exhibit 5, pp 40-48).

4. On Defendant's Schedule B, Defendant indicates that he has no books, tapes or compact discs. However, in his Deposition, Defendant admitted that he "has hundreds of books and dozens of pictures" (Plaintiff's Exhibit 5, pp 8) and also has 250 CD's and cassettes. (Plaintiff's Exhibit 5, pp 8).

5. On Defendant's Schedule F, Defendant mislabels 1.4 million dollars in business debt as personal. Specifically, Bruno Vick's claim for $497,607.00 is listed as a personal loan when it was actually a business debt with a personal guarantee; Timothy Woods' claim for $400,000.00 is listed as a personal loan when the claim amount is actually the value of future payments on a non-compete contract; and Thomas Schmitz' claim for $527,000.00 is listed as a personal debt when it is actually a business debt with a personal guarantee. (Plaintiff's Exhibit 5, pp 40-48).

6. On Schedule G, Defendant admits to loaning money to individuals to purchase land, and sometimes holding a mortgage on that property until it is paid off, but cannot say for certain that he has been paid for all of his loans and mortgages. (Plaintiff's Exhibit 5, pp 48-50).

7. On Schedule I, Defendant is unable to explain the $2,500 he listed as "regular income from operation of a business . . ." Defendant claims that he was paid as an independent contractor/consultant or that he borrowed money to pay his bills. Defendant did not provide any specific information indicating how he earned his monthly income. (Plaintiff's Exhibit 5, pp 50-53). The stated income of $2,500 on Schedule I is inconsistent with the stated income of zero listed on Defendant's Statement of Financial Affairs.

8. The Debtor states that an individual named "Parvez" either paid him for independent contract work or loaned him money. (Plaintiff's Exhibit 5, pp. 52-53). No individual named "Parvez" is listed on Defendant's Petition or Schedules.

9. When asked about his income and expenses, Defendant frequently states that he does not know or remember and that his bookkeeper, Karen Bush, should be asked. (Plaintiff's Exhibit 5, pp 54).

10. In Defendant's Statement of Financial Affairs, ¶ 1, requiring the disclosure of "income from employment or operation of a business", Defendant lists no income for the years 2003, 2004, and YTD 2005. However, Defendant testified at both his 2004 meeting and his deposition that his companies made his mortgage payments, paid his utility bills, and paid his everyday ordinary expenses. (Exhibit

3

1, pp. 11-13), (Exhibit 5, pp. 52-54).

11. In Defendant's Statement of Financial Affairs, ¶ 2, requiring the disclosure of "income other than from employment or operation of a business", Defendant failed to disclose a non-compete agreement for which he was paid $10,000.00 in 2005. (Plaintiff's Exhibit 6).

12. Defendant failed to disclose that he worked for others in exchange for direct payment of his household expenses. (Plaintiff's Exhibit 5, pp 69-70).

13. Defendant lists a Wisconsin address for creditor, Bruno Vick, who holds a claim for $497,607.00. (See, Matrix). Defendant testified that he has known Mr. Vick for ten years, knows where he lives and had, prior to filing for bankruptcy, visited Mr. Vicks' home in Ohio. (Exhibit 1, pp 85-86).

14. Defendant, as President of New Super Sale, Inc., sold the rights to certain show dates to Larry Perez' company for an unknown amount of money. (Plaintiff's Exhibit 7). Defendant testified that there may have been other dates transferred by one or more of his companies prior to filing bankruptcy, but he does not remember or know of any specifics. (Exhibit 5, pp 28 -34). These "dates", as testified by the Debtor, would have been dates in November of 2005 and January and/or February of 2006, prime time season for his industry. (Exhibit 5, pp 28 - 34). Plaintiff argues that, since there is no bright line, or even blurred line between Defendant and his businesses, any income derived though the sale of those dates should have been disclosed, and any sales after the filing of his petition should also have been disclosed as assets of the estate.

15. Back in 1997, Defendant placed numerous of his companies into bankruptcy. These cases were consolidated and administered under the case of Super Sales of America, Case No. 98-59889 TJT. In that case, the Trustee filed two adversary proceedings to recover undisclosed assets. One of those adversaries was against Debtor for concealing assets from the Trustee.

16. In 2004, as a part of Defendant's planning prior to filing bankruptcy, Defendant refinanced his house, removing all equity above the exemption amount.

Defendant merely denies that he has violated § 727(a)(2) and § 727(a)(4).

II.

STANDARD FOR SUMMARY JUDGMENT

4

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252. The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

III.

JURISDICTION

Bankruptcy courts have jurisdiction over all cases under title 11 and all core

5

proceedings arising under title 11, or arising in a case under title 11.  28 U.S.C. §§ 1334 & 157.  Core proceedings include proceedings to determine dischargeability.  *Id.* § 157(b)(2)(I).  As this is a proceeding to determine dischargeability, this is a core proceeding under 28 U.S.C. § 157(b).  Thus, this Court has jurisdiction over this matter.

IV.

ANALYSIS

I.   There are questions of fact as to whether Defendant concealed or transferred assets in violation of Section 727(a)(2).

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless one or more of eight exceptions is met.  Although exceptions to discharge are strictly construed (*See Rembert v. AT&T Universal Card Services, Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998)), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor."  *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997). 11 U.S.C. 727(a)(2) states:

> (a) The court shall grant the debtor a discharge, unless –
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> >
> > > (A) property of the debtor, within one year before the date of the filing of the petition; or
> > >
> > > (B) property of the estate, after the date of the filing of the petition.

In order to deny a debtor his discharge, § 727(a)(2) requires that four elements

6

be proven: (1) transfer of property; (2) belonging to the debtor; (3) within one year of filing the bankruptcy petition; and (4) with actual intent to hinder, delay, or defraud creditors or an officer of the estate. *See, e.g., In re Halperin*, 215 B.R. 321 (Bankr. E.D.N.Y. 1997).

Because a debtor rarely admits to acting "with actual intent to hinder, delay, or defraud creditors or an officer of the estate", courts have considered the following factors as indicators of fraudulent intent:

(1) the transfer was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer was disclosed or concealed;

(4) before the transfer was made, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all of the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Taunt v. Wojtala (In re Wojtala)*, 113 B.R. 332, 336 (Bankr. E.D. Mich. 1990) citing *In re*

*Peters*, 106 B.R. 1 (Bankr. D. Mass. 1989); *In re Brooks*, 58 B.R. 462 (Bankr. W.D. Pa. 1986).

Courts also look to a number of factors to determine if a debtor's transfer was intended to hinder or delay creditors, including:

> (1) whether the transaction is conducted at arms-length; (2) whether the debtor is aware of the existence of a significant judgment or over-due debt; (3) whether a creditor is in hot pursuit of its judgment/claim and whether debtor knows this; and (4) the timing of the transfer relative to the filing of the petition. Thus while a court may, after viewing all of the relevant factors, determine that the debtor did not intend to defraud any creditor it may still reach the conclusion that the debtor did intend to hinder or delay a creditor.

*Wojtala*, 113 B.R. at 336-337.

In this case, Plaintiff alleges that Defendant should be denied his discharge under § 727(a)(2) because Defendant fraudulently transferred his property out of the estate. From the lengthy list of allegations raised by the Plaintiff, the Court can only identify four potential transfers which may violate § 727(a)(2). First, Plaintiff alleges that Defendant, as President of New Super Sale, Inc., sold the rights to certain show dates to Larry Perez' company for an unknown amount of money. Second, Plaintiff alleges that Defendant testified that there may have been other dates transferred by one or more of his companies prior to filing bankruptcy. (Exhibit 5, pp 28 -34). These show dates as testified by the Defendant, would have been post-petition dates in November of 2005, and January and/or February of 2006, prime-time season for his industry. (Exhibit 5, pp 28 -34). Third, Plaintiff alleges that Defendant loaned money to individuals to purchase land but cannot say for certain that he has been paid for all of his loans.

8

(Plaintiff's Exhibit 5, pp 48-50).  Fourth, Plaintiff alleges that Defendant improperly removed the equity in his house.

This Court finds that, with respect to the transfer of show dates, there are issues of fact concerning whether the Defendant or New Super Sale, Inc. (or another of Defendant's companies) made those transfers.  If New Super Sale, Inc. (or another of Defendant 's companies) was, in fact, the entity that made those transfers, Plaintiff must show that Defendant is the alter ego of those companies.  Plaintiff has not yet made that showing.

With respect to Plaintiff's allegation that Defendant made loans for which he was not repaid, Plaintiff has not provided any evidence to support that such money was loaned with intent to defraud.  Further, with respect to Plaintiff's allegation that Defendant improperly removed the equity from Debtor's house, Plaintiff has not provided any evidence that equity was depleted within one year of the bankruptcy filing.

For these reasons, this Court finds that there are issues of fact regarding whether Defendant transferred property with intent to defraud pursuant to § 727(a)(2).

II. <u>There is no question of fact as to whether Defendant Made Numerous False Statements in His Statement of Financial Affairs and Schedules in violation of 11 U.SC § 727(a)(4).</u>

Section 727(a)(4)(A) bars a debtor's discharge if he knowingly and fraudulently makes a false oath or account in connection with the case.  "A false oath that is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." 6 *Collier on Bankruptcy* ¶

9

727.04[1][c] at 727.42.

In order to prevail under § 727(a)(4)(A), a creditor must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *In re Zwirn*, 2005 WL 1978510 (Bankr. S.D. Fla 2005)(citations omitted).

The purpose of § 727(a)(4)(A) is to "ensure 'that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.'" *In re Bratcher,* 289 B.R. 205, 218 (Bankr. M.D. Fl. 2003)( *quoting Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987)). Section 727(a)(4)(A) ensures that adequate information is available to the case trustee and creditors without the need for examination or investigation to determine whether the information is true. *In re Craig,* 252 B.R. 822, 828-29 (Bankr. S.D. Fl. 2000). Debtors have a "paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects." *Craig,* 252 B.R. at 829 (internal quotation omitted). "Policy considerations mandate that the requirement to list all assets and liabilities is an absolute obligation of those seeking discharge of their debts." *Whitehead,* 278 B.R. 589, 594 (bankr. M.D. Fl. 2002). "[A] debtor who fails to make a full and complete disclosure of relevant information places the right to the discharge in serious jeopardy." *Id.*

> The requisite intent. . . may be discovered by inference from the facts. 'A reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the

10

06-04000-mbm    Doc 42    Filed 01/19/07    Entered 01/19/07 11:08:23    Page 10 of 14

level of fraudulent intent necessary to bar a discharge.' However, a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent.

6 *Collier on Bankruptcy* ¶ 727.04[1][a] at 727-40-41.

In this case, Defendant makes the following significant misrepresentations in his Statement of Financial Affairs ("SOFA") and schedules[3]:

(a) In Defendant's Statement of Financial Affairs, ¶ 1, requiring the disclosure of "income from employment or operation of a business", Defendant lists no income for the years 2003, 2004, and YTD 2005. However, Defendant testified at both his 2004 meeting and his deposition that his companies made his mortgage payments, paid his utility bills, and paid his everyday ordinary expenses. (Exhibit 1, pp. 11-13), (Exhibit 5, pp. 52-54).

(b) In Schedule I, Defendant is unable to explain the $2,500 he listed as "regular income from operation of a business . . ." Defendant claims that he was paid as an independent contractor/consultant or that he borrowed money to pay his bills. Defendant did not provide any specific information indicating how he earned his monthly income, notwithstanding the fact that Schedule I clearly states that if income is derived from operation of a business or profession, the Debtor must attach a detailed statement. Furthermore, the stated income of $2,500 on Schedule I is inconsistent

---

[3]Plaintiff alleges that Defendant made many false oaths. This Court is only concerned with statements or omissions that are materially related to the bankruptcy case. For example, the Plaintiff's allegations that Defendant failed to list his books and CD's, while it should be corrected, is not materially related to the bankruptcy case.

11

with the stated income of zero listed on Defendant's Statement of Financial Affairs.

(c) The Debtor states that an individual named "Parvez" either paid him for independent contract work or loaned him money. (Plaintiff's Exhibit 5, pp. 52-53). No individual named "Parvez" is listed on Defendant's Petition or Schedules.

(d) Defendant failed to disclose that he worked for others in exchange for direct payment of his household expenses. (Plaintiff's Exhibit 5, pp 69-70). Defendant failed to detail any of this income on either his SOFA or Schedule I.

Defendant fails to explain any of the material misrepresentations made in his SOFA and Schedules and he has not attempted to amend his SOFA or Schedules so that his sworn pleadings are consistent with his sworn testimony at his 2004 exam and his deposition. Defendant's testimony is not only inconsistent with his pleadings, his testimony is evasive. Any specific questions regarding Defendant's income or the books and records of his companies are met with the response, "I'm not a very strong accounting person so I get confused on these things"(Ex 1, p.10, p.25), or with the response that Defendant's accountant, Karen Bush, is the only person with any knowledge of Defendant's financial affairs. (Ex. 1, pp 43, 74, 75, 82; Ex. 5, pp 32, 36, 54, 55, 59, 63, 65, 68)

Defendant owned businesses which earned approximately $70,000,000 in revenue between 2002 and 2004. Defendant has prior experience with the bankruptcy

12

system. In other words, Defendant is familiar with both business operations and bankruptcy. Immediately after filing for bankruptcy, Defendant started working with a company owned by his accountant – a company which is in the same business as Defendant's defunct companies, Super Sales, Incorporated, and New Super Sale, Inc. Based on these facts, Defendant's disregard for the requirement that his bankruptcy schedules and SOFA be "true and correct" to the best of his knowledge cannot be passed off as mere carelessness. The schedules and SOFA are so inaccurate that the Court infers that Defendant intended to mislead and deceive his creditors as to the true state of his financial affairs.

In summary, this court finds that Defendant's own testimony at his 2004 exam and deposition establish that he is not entitled to a discharge under 11 U.S.C. 727(a)(4). In his SOFA and schedules, Defendant made statements under oath that he knew were false, the statements were made with the intent to deceive, and the statements related materially to the bankruptcy case. Therefore, Defendant's discharge is denied under 11 U.S.C. 727(a)(4).

V.

CONCLUSION

For the foregoing reasons, this Court DENIES Plaintiff's Motion for Summary Judgment under 11 U.S.C 727(a)(2), and GRANTS Plaintiff's Motion under 11 U.S.C. 727(a)(4).

**Signed on January 19, 2007**

/s/ Marci B. McIvor
**Marci B. McIvor**

13

United States Bankruptcy Judge